UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GARLIN RAYMOND FARRIS, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> MERRICK B. GARLAND, *et al.*, : <br> : <br> Defendants. : <br> : | Civil Action No. 22-0112 (ABJ) |

**MEMORANDUM OPINION**

Plaintiff Garlin Raymond Farris brings this action under the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 552. Pending before the Court on Defendants' Renewed Motion for Summary Judgment (ECF No. 44). For the reasons discussed below, the motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff's original FOIA request, dated October 29, 2020, and addressed to the United States Attorney for the Western District of North Carolina, sought the following information:

> [A]ll records . . . pertaining to case number 3:18-cr-00099-RJC-DCK-1 that was carried out by the United States Attorney Office for the Western District of North Carolina, Charlotte Division from January 2016 until January 2020. This request includes the ATF/FBI violent crimes task force investigation, including the date the investigation opened and the date the investigation closed. Mr. Ferris is requesting all documents and records concerning Garlin Farris, specifically the 18 month long investigation conducted by the ATF/FBI violent crimes task force lead by ATF Special Agent Jason Murphy, culminating in the March 6, 2018 arrest and subsequent prosecution of Mr. Farris. This is an all-inclusive request and includes any documents, wherever located, in which Garlin Farris is named or mentioned or listed including investigations of persons or business entities other than Garlin Farris.

Decl. of Ebony Griffin (ECF No. 25-2, "Griffin Decl."), Ex. 1 (ECF No. 25-3) at 1.  A preliminary search indicated that records maintained by United States Attorney's Office for the Western District of North Carolina ("USAO-WDNC") related to discovery in plaintiff's criminal case totaled "more than 20 disks and more than 10,000 pages."  Decl. of Katharine Madden (ECF No. 44-2, "Madden Decl.") ¶ 8.  Plaintiff modified the request twice, and at issue in this case is the second modified request, dated August 23, 2021, to the Executive Office for United States Attorneys ("EOUSA"):

> I am specifically asking for the GPS report that AUSA asked witness Gordon Killian [about] at my trial.  United States v. Garlin Raymond Farris, case number 3:18-cr-00099.
>
> Please include all DEA 6 reports for File Number: **KF-16-0046**, File title **Robinson, Ryan**, program code **HID100** and G-Dep Identifier **WCA3I** . . . prepared between June 15-20, 2017.

*Id*., Ex. 2 (ECF No. 44-4) at 2 (emphasis in original); Statement of Additional Material Facts (ECF No. 44-7, "2d SMF") ¶ 2.[1]

EOUSA referred this request, assigned Tracking Number EOUSA-2021-000556, to the USAO-WDNC, Griffin Decl. ¶ 12, the district where plaintiff was arrested, tried and convicted, *see id*., Ex. 1 (ECF No. 25-3 at 1); Supp. Decl. of Ebony Griffin (ECF No. 38-1, "Supp. Griffin Decl.") ¶ 7; Def.'s Statement of Material Facts As To Which There Is No Genuine Dispute (ECF No. 25-1, "First SMF") ¶ 1.

EOUSA and USAO-WDNC staff "interpreted the [modified] request[] to mean 'the GPS

---

[1]  G. Killian, an Investigator with the Catawba County, North Carolina, Sheriff's Office Narcotics/Vice Division, submitted an affidavit in support of the Catawba County Sheriff's Office Drug Task Force motion to install a GPS tracker on a 2006 Dodge Charger registered in North Carolina with license plate number ELH-5489.  *See generally* Supp. Decl. of Ebony Griffin (ECF No. 38-1), Ex. 4 (ECF No. 44-6).

reports and DEA 6 Reports prepared between June 15-20, 2017.'" Griffin Decl. ¶ 13. A search of the electronic case file, physical case file, and public court docket on November 16, 2021, yielded 43 pages of records, described as follows:

- Discovery Documents USA-00000204 to USA-00000213 containing the GPS Affidavit, Motion, and Order
- Discovery Documents USA-00000508 to USA-00000518
- DEA-6 reports for file # KF-16-0046 prepared April-June, 2017
- DEA Seizure/FIRE form with file title "Robinson, Ryan" and program code "HID100" and G-Dep Identifier "WCA3I"

*See* 2d SMF ¶ 6; *see id*. ¶ 10. Each document was "related to" plaintiff and fell within "the timeframe of April-June 2017." *Id*. ¶ 5.

EOUSA referred all 43 pages of records to the Drug Enforcement Administration ("DEA") where they originated. *See* First SMF ¶ 5; Decl. of Angela D. Hertel (ECF No. 25-8, "Hertel Decl.") ¶ 8; Griffin Decl. ¶¶ 17-18. DEA determined that 36 pages were not responsive because they either fell outside of the date range specified in plaintiff's modified request or were not DEA 6 Reports. *See* First SMF ¶ 6; Hertel Decl. ¶ 9. The remaining seven pages, identified as a DEA 6 Report dated June 15, 2017, were responsive, and from these pages, DEA redacted certain information under Exemptions 6, 7(C), 7(D), 7(E), and 7(F). *See* First SMF ¶¶ 7-11.

A second search on May 31, 2022, "for the GPS tracker data related to a 2006 Dodge Charger, License Plate ELH[5]489, for the requested period of April- June 2017," 2d SMF ¶ 7, yielded "the requested tracker data report" on the public docket of the criminal case (ECF No. 169). *Id*.; *see* Supp. Griffin Decl. ¶ 8.[2] Neither a third search on June 1, 2022, nor a fourth search on December 15, 2023, located additional records regarding GPS tracker data. *See* 2d SMF ¶¶ 8-

---

[2] Defendants represent that the tracker data report had been released to plaintiff and counsel representing him in post-conviction proceedings, *see* Supp. Griffin Decl. ¶ 8, and plaintiff acknowledged having received this information. *See* Pl.'s First Opp'n at 2. The report appears to cover the period from June 9, 2017, to June 11, 2017. *See id*., Ex. B (ECF No. 28-1) at 9-13.

3

9. However, the fourth search located copies of Attachment D to ECF No. 169, designated "Government Trial Exhibit 35d," in the physical case file and discovery discs. *Id*. ¶ 9. Because three other documents, designated Government Trial Exhibits 35a, 35b, and 35c, were similar to Government Trial Exhibit 35d, the EOUSA released them, too. *Id*.

## II. LEGAL STANDARD

FOIA cases ordinarily are resolved on summary judgment, *see Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011), and summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, . . . together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

An agency may meet its burden solely on the basis of affidavits or declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). "To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption,' *id.* § 552(a)(8)(A)(i)(I)." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (brackets in original).

**III. DISCUSSION**

    **A. EOUSA'S Searches for Responsive Records**

"The adequacy of an agency's search is measured by a standard of reasonableness . . . and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citations and internal quotation marks omitted). An agency must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents," *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted), and it may submit declarations explaining the scope and method of the search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, an agency's affidavits or declarations are sufficient to demonstrate compliance with FOIA. *Id*. at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena*, 180 F.3d at 326.

    EOUSA's declarant began the search of USAO-WDNC records "using the key terms as indicated in Plaintiff's FOIA second narrowed request related to the GPS Report ('GPS,' 'Gordon,' 'Killian,' 'Charger,' and 'ELH-5489.') and the key terms related to the DEA-6 Reports ('DEA,' 'KF-16-0046,' 'Robinson,' 'HID100,' and 'WCA3I.')." Madden Decl. ¶ 10. Next, the declarant "reviewed the physical case files, the [USAO-WDNC] electronic network, and the public [court] docket for any materials related to [plaintiff]," and found that "criminal case records were primarily in paper and disc format," *id*. ¶ 11, including "discovery discs in the physical case file." *Id*. The declarant then searched the discovery discs and physical case files "using the key words 'GPS,' 'Gordon,' 'Killian,' 'Charger,' 'ELH-5489,' 'DEA,' 'KF-16-0046,' 'Robinson,' 'HID100,' and 'CCA3I.'" *Id*. The search yielded 43 pages of records. *See id*. ¶¶ 12-13; Supp. Griffin Decl. ¶ 14.

5

A second search on May 31, 2022, "for the GPS tracker data related to a 2006 Dodge Charger, License Plate ELH[5]489, for the requested period of April-June 2017," Madden Decl. ¶ 14, led the declarant to "public records filed with the U.S. District Court for the Western District of North Carolina, in Plaintiff's criminal proceeding."  *Id*.  One trial exhibit (ECF No. 169) "consisted of the requested tracker data report."  *Id*.; *see* Supp. Griffin Decl. ¶ 8.  Neither a third search on June 1, 2022, nor a fourth search on December 15, 2023, of the "physical [case] file, discovery discs, and public docket" using the search term "GPS" located additional responsive records.  *See* Madden Decl. ¶¶ 15-16.  However, the fourth search yielded a copy of ECF No. 169, designated "Government Trial Exhibit 35d."  *Id*. ¶ 16.  This document "appear[ed] to be phone correspondence between [plaintiff] and a co-conspirator . . . during the time of the GPS tracking."  *Id*.  Staff also determined that "Government Trial Exhibits 35a, 35b and 35c were similar to Government Trial Exhibit 35d."  *Id*.  Although these documents are not GPS records, EOUSA released them to plaintiff anyway "in the abundance of caution."  *Id*.

Plaintiff faults EOUSA's search on the ground that it produced "only one day of tracking, along with the affidavit and the judge's order approving the tracking device."  Mot. in Opp'n to Defs.' Renewed Mot. for Summ. J. (ECF No. 47, "Pl.'s 2d Opp'n") at 1-3.  According to plaintiff, the Catawba County Sheriff's Office, a member of the DEA-HIDTA task force involved in the investigation, maintains the records he wants.  *See id*. at 3.  He argues that, because "DEA-HIDTA was the lead agency and was in charge of the day to day operation" of the investigation, Catawba County Sheriff's Office records are "agency records" for FOIA purposes, *id*. at 5, such that defendants are obliged to release them.  *See id*. at 7.  Plaintiff's position is without merit.

First, plaintiff submitted his request to EOUSA.  The request, as modified, triggered EOUSA's obligation to search its own records and make responsive records "promptly available"

6

to plaintiff.  5 U.S.C. § 552(a)(3)(A).  FOIA did not require that EOUSA to search for and release records maintained by DEA or any other federal or local agency.  Even if there were responsive records maintained by the Catawba County Sheriff's Office, as a state law enforcement agency, it is not subject to FOIA.  *See, e.g., Mouton v. Neustrom*, 644 F. App'x 287, 287 (5th Cir. 2016) (per curiam) (affirming dismissal of FOIA claim against Lafayette Parish Sheriff and Internal Affairs Office "because FOIA does not apply to the local defendants" named in the complaint).

Second, "the fact that a particular document was not found does not demonstrate the inadequacy of a search."  *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) (citations omitted).  The Court evaluates an agency's search by its methods, not its results.  *See Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  The fact that plaintiff "feels certain" that the tracking data records "must exist" is not sufficient to defeat defendants' showing on summary judgment.  *See, e.g.*, *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (noting that "mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records"); *see also Dibacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 67 n.13 (D.C. Cir. 1990)) (this is a "losing claim put to bed . . . years ago and age has not improved it.").

The Court concludes that the scope and method of EOUSA's search for records responsive to plaintiff's modified FOIA request was reasonable.

### B. Exemption 7

#### 1. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an

7

enumerated harm.  *See* 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To show that the . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  Here, defendant easily meets its burden.

"DEA's law enforcement mission includes enforcing the controlled substance laws and regulations of the United States," and its authority is derived from the Controlled Substances Act, *see* 21 U.S.C. §§ 801 *et seq*.  Hertel Decl. ¶ 5.  Its declarant explains that the responsive "DEA 6 Report is part of an investigative case," *id*. ¶ 16, pertaining to an investigation in which plaintiff was involved, as well as plaintiff's arrest and conviction in the U.S. District Court for the Western District of North Carolina.  *See id*. ¶ 13; Pl.'s 2d Opp'n at 1.

### 2. Exemption 7(C)

Defendants rely on Exemption 6 in conjunction with Exemption 7(C), among others, to protect information about third parties.  *See generally* Hertel Decl. ¶¶ 17.  "[W]hen an agency seeks to withhold records 'compiled for law enforcement purposes' as implicating personal privacy, only Exemption 7(C) need be considered, since 'all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C.)'"  *Battle Born Invs. Co., LLC v. U.S. Dep't of Justice*, No. 24-cv-0067, 2024 WL 5246515, at *4 (D.D.C. Dec. 30, 2024) (quoting *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011)).

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular information,

8

the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted).  When balancing the private interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

The responsive DEA 6 Report "contain[s] names and other identifying information . . . about[] individuals who were involved or associated with a law enforcement investigation," Hertel Decl. ¶ 19, including "law enforcement personnel, witnesses, and suspects." *Id*.  DEA's declarant explains that disclosure of this third-party information "could subject [these individuals] to possible harassment, or focus derogatory inferences and suspicion upon them." *Id*. ¶ 19.  And, the declarant states, disclosing information about third parties in the context of a criminal investigation would have a "stigmatizing effect," *id*. ¶ 20, and "would subject the individuals to unwarranted attention, harassment, and potential harm." *Id*.  The declarant further explains that release of this third party information "would not aid the public's understanding of how DEA carries out its mission of enforcing the controlled substance laws," *id*., such that the individuals' "significant privacy interests outweigh[] the public interest[] in disclosure[.]" *Id*.

The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to

9

confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991); *see Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003) ("Assuming that the 'private' individuals mentioned in the records are living, their names and identifying information are presumptively exempt from disclosure under the *SafeCard* rule."). The Court concludes that DEA properly withheld third party information under Exemption 7(C).

### 3. Exemptions 7(C) and 7(F)

DEA withheld "information that would reveal the identity of, and disclose personal information about, individuals who were involved [in] or associated with a law enforcement investigation," Hertel Decl. ¶ 19, specifically, the "names of a DEA Task Force Officer, a Group Supervisor, and Sheriff's Office Investigators." *Id*. ¶ 23. To the extent this information is not protected under Exemption 7(C), DEA relies also on Exemption 7(F), *see id*., which protects "records or information compiled for law enforcement purposes [the disclosure of which] could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(D).

DEA's declarant notes "the sensitive and often contentious nature of the work" these law enforcement personnel perform. Hertel Decl. ¶ 24. According to the declarant, "[p]ublicity about [their] DEA employment would seriously prejudice [their] effectiveness [in] conduct[ing] their official duties," while making them targets for outsiders seeking "access to sensitive information" to which these individuals have access. *Id*. Further, the declarant states, "the disclosure of the identities of DEA employees actively working on investigations, or who have worked on investigations resulting in a conviction, could endanger their lives and physical safety if members of the public, including drug trafficking organizations, have access to the information and wish to

10

harm DEA employees because of their work." *Id*. And given "that violence is inherent in the drug trade," the declarant explains that disclosure of the third parties' identities "could subject them to harassment, reprisal, or physical retaliation." *Id*. ¶ 26. DEA concludes that these individuals' privacy interest outweighs any minor public interest in disclosure of their identities. *See id*. ¶¶ 27-28. The Court concurs. *See, e.g.*, *Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 301 (D.D.C. 2011) (concluding that DEA's reliance on Exemption 7(F), in conjunction with Exemptions 7(C) and 7(D), was proper to protect the identities of special agents, law enforcement officers, government employees, and confidential sources of information), *aff'd in part sub nom. Adionser v. U.S. Dep't of Justice*, No. 11-5093, 2012 WL 5897172 (D.C. Cir. Nov. 5, 2012).

### 4. Exemptions 7(C) and 7(D)

DEA withheld "the identity of a DEA confidential source ('CS') and all information the CS provide[d] to DEA." Hertel Decl. ¶ 29. To the extent this information is not protected under Exemptions 7(C) and 7(F), DEA relies on Exemption 7(D), which protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (citing *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 170-74 (1993)) (internal quotation marks omitted). There is no general "presumption that a source is

confidential within the meaning of [FOIA] Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *Landano*, 508 U.S. at 181.

The declarant explains that DEA entered into a formal written agreement with the CS which "explicitly states that the United States Government and DEA will protect [his or her] identity to the extent [possible] under the law." *Id*. ¶ 30. The CS, who "provided information to DEA during the course of an investigation under circumstances from which an assurance of confidentiality can reasonably be inferred," *id*., could face "serious bodily harm, substantial repercussions, and possibly even death," *id*. ¶ 31, if his or her identity were disclosed. In addition, the declarant states that disclosure "could harm other DEA criminal investigations and development of criminal intelligence" in the future by discouraging others from cooperating with DEA. *Id*.

DEA's reliance on Exemption 7(D) is proper. *See, e.g.*, *Kowal v. U.S. Dep't of Justice*, No. 18-cv-938, 2021 WL 3363445, at *5 (D.D.C. Aug. 3, 2021) (concluding DEA properly invoked Exemption 7(D) to protect confidential source, noting "Courts often find that confidentiality is implied in illicit drug trade investigations because violent reprisal is so common").

### 5. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Here, DEA withholds "investigative case

number, including investigative file numbers," Hertel Decl. ¶ 33, and "internal G-DEP identifiers." *Id.* ¶ 34. This matter needs only cursory review, as information of this sort routinely is protected. *See, e.g., Chavis v. U.S. Dep't of Justice*, No. 20-cv-0638, 2021 WL 1668069, at *8 (D.D.C. Apr. 28, 2021) (concluding that G-DEP and NADDIS codes are "routinely and appropriately withheld" under Exemption 7(E)), *appeal dismissed*, No. 21-5150 (D.C. Cir. Dec. 6, 2021); *Adionser v. Dep't of Justice*, 33 F. Supp. 3d 23, 26 (D.D.C. 2014) (granting summary judgment in the DEA's favor in withholding G-DEP codes under Exemption 7(E)).

### C. Segregability

"[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)); 5 U.S.C. § 552(b). Defendants' declarants aver that all reasonably segregable information has been released, Supp. Griffin Decl. ¶¶ 20, 22; Hertel Decl. ¶ 36, and given the fact that what was withheld was largely names and case numbers and not the substantive information sought by plaintiff, this showing is sufficient.

## IV. CONCLUSION

The Court concludes that: (1) EOUSA conducted a reasonable search for records responsive to plaintiff's modified FOIA request, EOUSA-2021-000556; (2) EOUSA properly referred 43 pages of records to DEA; and (3) both EOUSA and DEA properly withheld information under Exemption 7. Accordingly, defendants' renewed summary judgment motion, ECF No. 44, is granted. An Order is issued separately.

DATE: March 30, 2025                              AMY BERMAN JACKSON
                                                  United States District Judge